IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRAUN THOMPSON, #09106-029, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-01062-JPG |
| | ) |
| L. BROOKS, | ) |
| R. PASS, | ) |
| DR. HARBISON, and | ) |
| FBOP DIRECTOR, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for preliminary review of the Complaint filed by Plaintiff Braun Thompson. (Doc. 7). Plaintiff is an inmate in the custody of the Federal Bureau of Prisons ("BOP") and is currently incarcerated at the United States Penitentiary located in Marion, Illinois ("USP-Marion"). He complains of inadequate medical care for back pain dating back to April 20, 2022. (*Id*.). Plaintiff brings this action against the individual defendants for injunctive relief[1] pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

The Complaint is now subject to review under 28 U.S.C. § 1915A. Section 1915A requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.

---

[1] The Court already considered and denied a motion for immediate emergency medical relief filed by Plaintiff, without a complaint, on May 19, 2022. (*See* Docs. 1, 4). In its Order, the Court instructed Plaintiff to file a complaint and either a motion for leave to proceed *in forma pauperis* or the $402.00 filing fee by June 21, 2022, if he wished to proceed any further with this matter. (Doc. 4). Plaintiff fully complied with this Order on July 25, 2022.

1

28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

The Complaint sets forth the following allegations (Doc. 7, pp. 7-10): For the past decade, Plaintiff has suffered from chronic back pain stemming from a compressed sciatic nerve. On April 20, 2022, Plaintiff awoke in severe pain, which he attributed to a pinched nerve. He allowed several days for the pain to subside, as it sometimes does without medical intervention. When the pain persisted, Plaintiff filed a sick call request and saw a nurse on April 25, 2022.

On April 26, 2022, Plaintiff met with Physician's Assistant Brooks about the issue. He described pain that radiated from his right shoulder down through his arm and hand. He also reported intense, spike-like pain between his right shoulder blade and spine. Brooks ordered an x-ray and prescribed a "step-down prescription" for prednisone. She instructed Plaintiff to return for further treatment the following week, if the pain did not subside, or wait to see his regular provider for treatment of chronic pain the following month, if the acute episode resolved.

When the prednisone proved ineffective, Plaintiff returned to sick call the following week on May 2, 2022. He complained of unabated pain. The sick call nurse reviewed the radiology report from the prior week and explained that Plaintiff suffered from degenerative bone damage in at least four vertebrae, one or more bone spurs, and one or more possible collapsed discs. Despite the x-ray results, Brooks took no steps to schedule another appointment with him.

On May 4 and May 5, 2022, Plaintiff used the emergency email notification system recommended by the Department of Justice for sexual abuse complaints to contact the Office of the Inspector General ("OIG") in Washington, DC. Plaintiff asked the OIG to contact the BOP

Director, BOP Internal Affairs, prison warden, and prison health services administrator (Dr. Harbison) about his emergency medical issue. He received no response.

On May 6, 2022, Plaintiff emailed Dr. Harbison to specifically inform her about his medical condition and his emails to OIG. Then, on May 8, 2022, Plaintiff sent a detailed complaint to Dr. Pass, who is his primary health care provider and a supervisor of the physicians' assistants. Dr. Pass responded with a "false" reference to neck pain and instructions to stop using email for his complaints. Plaintiff exchanged several more emails with Dr. Harbison and Dr. Pass. Dr. Harbison never responded, and Dr. Pass instructed Plaintiff to request sick call to address his issues. Plaintiff explained that he already did and was denied treatment in early May 2022. Even so, he was allegedly "forced" to return to PA Brooks for further medical care. Plaintiff refused to see Brooks because of her prior "misconduct and abuse." He also refused to see Dr. Harbison and Dr. Pass because of their misconduct. In fact, Plaintiff claims that he could not trust anyone under their supervision or even the prison administrators.

For these reasons, Plaintiff seeks court-ordered emergency medical attention from an outside provider that is paid for by the BOP. He also seeks an order requiring USP-Marion to produce his medical records for use at his outside appointments. And, he seeks an order requiring the OIG to produce copies of all communications with him. Injunctive relief is the only relief Plaintiff requests. (*Id.*).

## Discussion

Based on the allegations, the Court finds it convenient to designate the following claim in the *pro se* Complaint:

> **Count 1:** Eighth Amendment claim against Defendants for denying Plaintiff adequate medical care for his back pain and/or underlying back condition at USP-Marion beginning April 20, 2022.

**Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

Plaintiff brings his claim against the individual defendants pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971). In *Bivens*, the United States Supreme Court recognized an implied damages remedy against a federal agent for an unreasonable search and seizure in the absence of a statute conferring such a right. *Id*. The Supreme Court has recognized this implied damages remedy in only two other contexts: (1) a Fifth Amendment denial of equal protection claim based on gender discrimination in *Davis v. Passman*, 442 U.S. 228 (1979); and (2) an Eighth Amendment claim for inadequate medical treatment in *Carlson v. Green*, 446 U.S. 14 (1980). Lower courts have since been warned to refrain from expanding this implied damages remedy into any other contexts unless "special factors" counsel otherwise. *See, e.g., Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843, 1854-55 (2017); *Egbert v. Boule*, -- U.S. --, 142 S.Ct. 1793 (2022). In this particular case, the Court need not undertake an exhaustive analysis of whether Plaintiff's claim presents a new context and, if so, whether special factors warrant expansion of the remedy into the new context.

Even if the claim can proceed post-*Abbasi* and post-*Egbert*, Count 1 does not survive screening against the defendants for other reasons. *Bivens* provides an implied *damages* remedy against the relevant officials in their individual capacities. *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002). However, Plaintiff does not seek damages in this action. This action focuses entirely and exclusively on a request for injunctive relief.

As pled, Plaintiff cannot proceed with his claims for injunctive relief under *Bivens*. Although Plaintiff seeks injunctive relief, he has not named the defendants in their official

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

capacities. Count 1, an individual capacity claim brought pursuant to *Bivens*, does not survive as a request for injunctive relief. Claims for injunctive relief generally proceed against a high-ranking official who is responsible for implementing said relief, in his or her official capacity.

Moreover, the allegations support no claim for emergency injunctive relief. In order to obtain this relief, the plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007)). If those three factors are shown, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. *See id.* (citations omitted); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods*, 496 F.3d at 622; *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff has satisfied none of these requirements. As for the first requirement, he has not demonstrated any likelihood of success on the merits. Plaintiff cannot proceed with a request for injunctive relief against individual defendants pursuant to *Bivens*. As for the second requirement, Plaintiff has failed to demonstrate that no other adequate remedy at law exists. He should first attempt to resolve this matter using the prison's administrative remedies process. By all indications, Plaintiff bypassed the process altogether and began grieving inadequate medical care by emailing officials in Washington, DC, using the recommended procedure for sexual abuse complaints. However, Plaintiff makes no claim that his denial of medical care for a back problem involved sexual abuse. Before this Court can find that he has no other adequate remedy at law, Plaintiff must show that he actually tried to use the BOP's administrative remedies process at USP-Marion in a good-faith effort to resolve this matter internally before turning to

the federal courts or elsewhere. As for the third requirement, Plaintiff has not shown that he will suffer irreparable harm without injunctive relief. His complaint focuses on an acute episode of back pain and x-rays revealing several underlying conditions. However, Plaintiff does not describe or explain irreparable harm that will occur without outside treatment. Plaintiff's request for this relief admittedly stems from his mistrust of prison healthcare providers.

Even if Plaintiff brought this claim for money damages against the individual defendants, his claim would not satisfy the objective and subjective components of an Eighth Amendment claim. To do so, Plaintiff would need to demonstrate that each defendant acted with deliberate indifference (subjective component) to a serious medical need (objective component). *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Plaintiff has not shown that the defendants responded to his medical condition with deliberate indifference. Plaintiff instead admits that he refused to treat with each of the individual defendants involved in his care, including PA Brooks, Dr. Harbison, and Dr. Pass. He blames them for unspecified acts of "abuse" and "misconduct." (Doc. 7, pp. 7-9). However, the allegations show that each of these individuals provided instructions for care or actual care before he declined to see them. Plaintiff's decision to avoid treatment with these individuals is not deliberate indifference on their part.

Whether brought as a claim for injunctive relief or money damages, Count 1 does not survive screening and shall be dismissed without prejudice against the defendants for failure to state a claim for relief. Plaintiff may file an amended complaint herein, if he wishes to proceed with the claim in this action. Before doing so, Plaintiff should first consider whether he properly and completely exhausted his available administrative remedies at USP-Marion *before* bringing this civil action. If he did not, Plaintiff should do so immediately and then file a *new suit* to

pursue this claim. *See* 42 U.S.C. § 1997e. If he has exhausted his available administrative remedies and wishes to pursue his claim by filing an amended complaint herein, Plaintiff must comply with the deadlines and instructions below.

### Disposition

**IT IS ORDERED** that the Complaint (Doc. 7) does not survive preliminary review under 28 U.S.C. § 1915A and is **DISMISSED** without prejudice for failure to state a claim for relief. **COUNT 1** is **DISMISSED** without prejudice against **ALL DEFENDANTS**.

On or before **September 7, 2022**, Plaintiff is **GRANTED** leave to file a "First Amended Complaint." Should he fail to file an amended complaint within the allotted time or consistent with the instructions in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Plaintiff shall also receive one of three "strikes" for the dismissal. 28 U.S.C. § 1915(g).

If he amends, Plaintiff is strongly encouraged to use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 22-cv-01062-JPG). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces prior versions, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The amended complaint must stand on its own without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider. The

7

amended complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  8/10/2022

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Court**